Okay, the next case is number fifty-six. Thank you, Your Honor, may it please the Honorable Court, on behalf of Appellant Steve Morsi, I would like to focus my argument today on three issues. First, it was error to divide individual claim terms into multiple abstract ideas in the court below and then define them in eligible subject matter. Second, the patent solved here a computer-specific problem. They actually improved an existing technological process. And third, there was no evidence to support the fact findings that were ultimately made by the district court and that was improper at the stage of a Rule 12c motion. Now, part of the difficulty here is neither side has addressed our decision in intellectual ventures from last July. Are you familiar with that? I am, Your Honor. Well, doesn't that require us to reject some of your arguments, for example, on the fact finding issue? Well, Your Honor, I would say that, specifically, the... Don't you think you should have called that to our attention and discussed it? Your Honor, respectfully, I believe that came out after the briefs were submitted and perhaps we should have submitted a notice of supplemental authority, but I would point out that the problem with what the district court did in this particular case. In intellectual ventures, the court focused on two claims in two different patents. And among those claims, it found a single abstract idea in each one of those claims. Well, that's a different argument, but what it said, what the case said, was that the idea of tailoring the advertising to demographic and geographic features was an abstract idea, which your arguing here is not, right? Well, Your Honor, we're not arguing that it's... We don't have a claim that's merely directed to tailoring, and it wasn't actually an advertising. It is in our case. Of course, in intellectual ventures, it was a web presentation. We're not merely focusing on that. We have individual claims that, as part of the claim as a whole, involve much more than just mere looking at demographics and tailoring the ad presentation to that. We have an entire bidding process that's part of the same claim. Right, but that's a different argument than Judge Steichler was talking about. You did make the underlying argument that the trial court should have done a full factual analysis of whether tailoring ads to a particular demographic or geographic customer was something that was well-known in the past. In intellectual ventures, our court has said that it is. Your Honor, with respect to that limited point, I agree that there's commonality on that issue. But again, that highlights the problem with what the district court did here because it assumed that there was an analog to the bidding process for placement of the advertisements. It said that... The bidding process was well-known too, wasn't it? No, Your Honor. It's not. It's not a matter of whether it was well-known. It's a matter of preemption in this case. No, but was it well-known? The bidding process, I thought that the patenteer itself recognized that that was well-known in the prior art. The bidding process here, the way the court analyzed it was it said that that was an abstract concept. In other words, that was a fundamental known concept. That is bidding. And while we don't disagree that bidding in the abstract might be, the problem here is you can't take a single patent claim and dissect it into multiple abstract concepts and then attack it. At some point, any patent claim would suffer under that analysis, and that violates the direction that Alice gave to this court with respect to the caution that too broad an interpretation of the exclusionary principle would eviscerate all patent law. Because at some level, all patents are based upon combinations and rest upon and reflect laws of nature, natural phenomenon, or abstract concepts. And the problem here is that the court took two separate, very different abstract concepts and said that a single claim was directed to both. But what the court didn't find, and what I think it was required to find, is that there was a subject matter of either or both by these claims. The Supreme Court has recognized that preemption is a matter of degree. And no claim... But the court in Alice didn't say that all reconciliation would be preempted. I mean, it didn't go that far. It's a factor to consider, but it never said it's a requirement, did it? No, in fact, what is articulated is whether there's a disproportionate risk that the judicial exception would be fully preempted. And here, there is no disproportionate risk that targeted advertising or bidding would be completely eviscerated or threatened by the combination of those two principles in one claim. Where do we stop? What is the principal reason for stopping at two? Why not 10? Why not 20 different abstract ideas within the same claim? At some level, if we allow district courts to break down claims into any number of abstract ideas and then to claim that what's there is all abstract, no patent claim, no method claim like this will survive. But what was the invention here? So, the invention here actually goes to a very specific customized internet advertising presentation and a method for deriving that. How is it different from what was being done before? So, it's different in that it solves an existing problem that actually was not a brick-and-mortar problem. The existing problem was that methods of internet advertising, this is limited to that, were dependent entirely upon search results. So, for example, that introduced the notion of tailoring it to demographics. That you bring in these other factors and then you add to that the bidding process based upon a map. But the tailoring to demographics is exactly what intellectual ventures, we said, is an abstract idea. But there was no bidding at all in intellectual ventures and that's a key element of the claim. This court just simply can't disregard that. And the district court, in kind of separating that out and dealing with it, actually made, I think, an implicit fact finding that's not supported by the record. Why isn't the bidding conventional? So, what the district court analogized it to was that advertisers would often pay more for certain classified ads in the newspaper. And the court said that's, in effect, bidding. But it's not. That's a factual finding that did not defer to the position of Steve Morsa. All fact findings at the level of a 12C motion must be made at the light most favorable to the non-movement. And yet, the district court found that this was a notion, bidding, that existed as a fundamental concept. In Alice and in Bilski, the Supreme Court, twice, when it identified a fundamental concept, it pointed to a specific reference. In Bilski, there were three references. In BiSafe, this court did the very same thing. And that's powerful instruction to district courts that at least you should point to something to illustrate that it's a fundamental, well-known economic concept. So, the idea of bidding for advertisements, if I go to a store and I happen to pay more for an item, just as I would pay more for a classified ad, that doesn't mean that I'm bidding against somebody to set that ultimate price, that there's another consumer there. I'm choosing to pay more. But the choice to pay more does not necessarily invoke a bidding process. And the court just kind of finessed that issue. And we believe that was improper, implicit fact-finding that led to the error of this decision below. Because at most, when you have multiple abstract concepts, the only risk of preemption is in the intersection of those concepts. That's where the claim lies. And if that intersection is as narrow as it is in this case, then there is not a legitimate risk of preemption. And that's especially true when you have these claims that are directed to solving a technological problem. This problem of... So, is your argument that any time there's more than one abstract idea, we can't have a 101 determination? No, Your Honor. I would argue that in this case, that the combination of these two very disparate abstract concepts doesn't invoke a legitimate risk of preemption. And so, the 101 analysis scales in this case, there might hypothetically be some instances where you could. Now, Facebook, I would point out, they argue that this court has, in fact, already addressed the situation with multiple abstract claims. And they cite to the content extraction opinion. But we would point out that's not really a fair reading of content extraction. This court in content extraction found that there was a single abstract concept. It merely identified that it had three portions to it. So, what if the trial court here just defined this as a single abstract concept with a couple portions to it? Then you would find no analog to this that was a fundamental well-known concept. There was no fundamental well-known concept that combined the direct mailer that you get in your mailbox with a bidding process. There's no bidding that goes on for postal carriers to deliver a direct mail to your home. So, the idea that this was something that was previously known or that this would preempt a well-known, fundamental, known method of commerce just doesn't equate. That's why the district court did what it did. It had to break this up into multiple abstract claims and attack them each individually. And that's what was improper. That's what this court found was improper in DDR holdings. Because not only was that a technological solution to a technological problem, as is the case here. But also, the court in DDR holdings, the district court, failed to focus on and identify a single abstract concept. And we pointed out that error below. And yet the court did it. And that's one of the basis for our error here is that the court, in focusing on multiple abstract concepts, didn't focus on one and identify one. So, we need to understand that not only is this an abstract concept, but whether or not it's going to preempt a known method of business. For example, as the court has found, you know, contract interpretation or intermediation or hedging. Those are fundamental concepts in intellectual ventures. Two different claims, but one was budgeting. The abstract idea there was budgeting. Simple budgeting. It wasn't a combination of budgeting and bidding. And similarly, the other claim was simply analyzing information to, in other words, the court analogized it to a situation where advertising might be presented differently if it were presented at different times of day. So, it was tailoring advertising or tailoring a web presentation. But there was no aspect of bidding in that at all. Nothing that was a totally separate and different idea. And here, Steve Morsa came up with this idea to introduce this element, something that wasn't obvious to anyone. To introduce this new element and to add that level of bidding to the process. Demographic element. Well, the demographic element is actually separate from the bidding, but it looks at both demographics and, as was coined by Mr. Morsa, firmographics. So, even though bidding is an abstract idea, even though using demographics is an abstract idea, combining them makes it non-abstract. Well, combining them doesn't have the same risk of preemption, respectfully, Your Honor. And that's what we're looking at when we're deciding whether or not it's improperly abstract and therefore it's not eligible subject matter. Are we getting into an area where, if we allow this claim, we're going to preempt the entire class of claims? Ultimately, that's what the entire preemption analysis is designed to focus on. Whether there's that undue risk. Additionally, as I mentioned, this is a technological problem that didn't exist prior to the 1991 and the advent of internet advertising. The idea that ads were based entirely on search terms and the response to search terms and the limitations that were necessarily present in that. Well, the district court focused on the problem and the purpose behind the invention, but that's the wrong focus. For example, the purpose of an invention may be to increase efficiency or to lower cost, but those are inherently abstract. Increasing efficiency. Lowering cost. Those have been known since time immemorial as purposes, but you don't identify a for the claims which have specific elements are themselves abstract. Okay. Let's hear from the other side and we'll save you a little time. Thank you, Your Honor. Ms. Keefe. Thank you very much, Your Honors. Ms. Keefe, representing Facebook. May it please the Court. We actually do agree wholeheartedly that, in fact, the intellectual ventures versus Capital One decision is squarely on point. In intellectual ventures versus Capital One, the Court dealt specifically with the notion of whether or not targeted advertising was well-known and, in fact, something that was, I think the exact phrase that was used, long prevalent in our society. Long practice. Well, if it's well-known, it shouldn't be a matter of abstraction, should it? It should be a matter of prior art and distinction. I think it actually is both, Your Honor, but for the purpose of today's argument, that it is a matter of abstraction. That here, the abstraction is simply the idea of placing an ad that was targeted based on a bid. That's the abstraction here. Your friend on the other side has agreed that intellectual ventures sort of kill them as it relates to the question of targeted advertising generally. But he says that the bidding sets it apart, that intellectual ventures doesn't address bidding, that bidding's a different animal, and you have to combine the two together in order to see what the abstraction really is. Absolutely. And, in fact, bidding itself was, by the patent's own words, well-known and conventional in the field. You're saying bidding itself, but we know that the elements in combination claims often are known. St. Morris argues that it's the combination that here is the distinction. That's correct. But here, there is nothing that takes it out of the realm of the abstract to simply say that you're going to use a bid to place a targeted ad. Why is that abstract? Because it's the simple notion there is nothing anywhere in the claims or in the specification that describes how that's done. It's the simple idea of placing an ad, a targeted ad, based on bid information. Well, then it's a matter of enablement or description, is it not, rather than abstraction? No, I think it's still a matter of... There's also, separately, the issue of written description, enablement, 101, 102, those all still exist. But if you look back to the claims themselves, the claims claim nothing more than the abstract idea of placing a targeted ad based on a bid. And that's what the district court below found. As a whole, it's the simple idea of placing the ad, targeted ad, based on bid information. The specification of the patent at A40, column 3, lines 44 through 60, talk about how pay-for-placement database search systems and adjustments of bids that are made to place ads based on search. So placing an ad based on a bid, based on other information, is well known. And targeted advertising based on demographic... Why isn't that a matter of prior art? In terms of the fact that it's part of the prior art analysis to show that this is just an abstract idea that was well known and that, in fact, there's nothing further inventive, that is exactly what Alice asks us to do. The first is, is there simply an abstract idea that's being claimed here? And here, it's the abstract idea of placing a targeted advertisement based on a bid. That's an abstract idea. It's a simple concept. We could also, I suppose, regard the bidding as a second stage of Alice, like adding a computer or the internet. It's adding a conventional approach using bidding. You certainly could do that as well, Your Honor. In this case, nothing is given to any of these claims beyond network, processor, database, or processor electronics. And, in fact, the specification clearly points out at A44 and A45 that, in fact, any computer should be used, that there is nothing specific about the computer or the hardware that's being used here, including specific or rather generic concepts of bidding, generic concepts of ad placing. I don't think that that's accurate. The computer has to be programmed to perform these abstract steps, does it not? Computers always have to be programmed to perform any abstract... Abstract step. For example, in content extraction, the computer had to be performed in order to read the data that was coming in, in order to separate and organize it into a database. That did not remove it from the level of abstraction. Similarly, in IV, the computer had to be programmed in order to monitor what the navigation usage was, what time of day things were happening, in order to determine when to place the ad. So, in your view, what would have had to have been provided by this inventor to remove it from abstraction? It's a very difficult hypothetical question, but presumably, had they provided, for example, something incredibly concrete, like... Never mind incredibly concrete. Just at what point does one move from the abstraction to whatever else is needed? For example, if a specific piece of hardware was described, defined, and claimed that performed the step... Hardware? Perhaps. If there was, for example, a very specific... A hardware that embodied an inventive concept, you mean? Correct. It absolutely would always have to go the extra step of also including the inventive concept. Similarly, perhaps, if there had been something in the claims themselves that was dedicated to addressing a specific internet-related problem. We keep hearing the idea that this is all related to an internet-only problem, and therefore it's EDR. But if we go back to the claims themselves, the claims themselves never say such a thing or address any specific problem from the internet that didn't exist before. You're saying this is a matter of the content of the claims rather than the content of the specification? Absolutely. Or the construct. So if the claims are construed in light of the specification, would that solve your problem of abstraction? No, I don't believe so, Your Honor, because the claims... The name, to quote the court, the name of the game is the claim, and you always have to look to what the claim has. I agree that claims are always interpreted in light of the specification from which they're born, but the claims themselves still have to have the elements that take it out of the realm of abstraction. If we look to the claims here... You're saying the claims are too broad. That's not a matter of Section 101. It's a matter of 112, is it not? It's not necessarily a matter. It's a part of the 101... It's a part of the 101 analysis also. How broad are we going? How broad are the claims going? If the claims had been more narrow and more specific to something that itself was an inventive additional hardware piece, if that's the question Your Honor is asking, that by sometimes making a claim much more narrow, you may actually take it out of the realm of abstraction, I think that is a possibility. So I don't think it's necessarily... What would have had to have been included in these claims to take them out of the realm of abstraction? I am not 100... I'm not sure what exactly would have had to have been added because I can't myself envision it right now sitting here. But I could imagine a case in which a claim like this, which said, I want to target advertising based on demographics and I am going to use a specific data engine that takes information from a user in one language with a form that looks a certain way and brings it in, takes all of that information, translates it into a different language, reconstructs everything, and then uses a particularized device on the other end which itself has specially programmed hardware to recognize that, we might be able to get there. But I just don't know. Matter of enablement, but we know that the rules of claim drafting are that you don't put all of the minutiae in the claims. The claims are supposed to give notice of the boundaries of what you're covering, not all of the details of implementation. You're saying that had all of those details of implementation been in the claims rather than the specification, that would have solved the problem of 101? Not necessarily. I still do not know that... It's not their invention. I'm sorry? Your hypothetical is not their invention. There's no way to write this invention that they claim here in a non-abstract way because I agree with that, Your Honor. And that's why I'm struggling so deeply because I think the claims themselves would have to be rewritten so dramatically that they would no longer be the claims that are present. But it's not a question of rewriting the claim. You can't write claims for this invention that are non-abstract. I agree with Your Honor. What your hypothetical is doing is it's adding other inventions to it. And I believe that was a question I was asked was, what would you have to add in order to make this out of the realm of the abstract? I was asking a question of claim construction, not whatever Judge Dike has interpreted my question to mean. We know that the claims are to be construed in light of the specification. Agreed. And I gather that your concern is that these claims are written so broadly that it's not feasible as a matter of claim construction to interpose enough limitations to add enough specificity to make them at least not to be considered under 101. They might not pass 103 or 112 or something else. That is correct, Your Honor. That is exactly so. And if you look to the plain meaning of those claim terms, and in fact, there has been no out of that realm. They say that there's some claim construction that might save them, but they never propose what it is. And this Court has said in content extraction that if you do not explain what that proposed claim construction is, the Court simply can't make one up. Here, I contend there are no claim constructions that would take these claims out of the realm of the abstract. And that's why the IV case is so spot on and actually does exactly what it needs to do here. And there is nothing in Step 2 that adds any inventive feature to these claims to take them out of the realm of the abstract. There's nothing more than basic computer network and database, all things that are recognized by the specification in Columns 2 and at A45 and A44 and Columns 12 and 9, I believe, and the other that say simply these are conventional means, conventional hardware and conventional software that's being used. So there's nothing inventive here either. Okay. Have I answered the panel's question? I very much appreciate your time. Thank you, Your Honor. Okay. Mr. Bragadone, you have your rebuttal time. Thank you, Your Honor. The Court brought up the issue of claim construction, which is an important fact. We complained mightily about the fact that the District Court did not do a claim construction and claim construction terms were proposed. In fact, in Intellectual Ventures, to distinguish it further, there was a claim construction. But we've repeatedly said that claim construction is not necessary in a 101. It's not necessary, but I think it goes directly to the question that Your Honor was asking, Judge Newman was asking, is there a claim construction here that would take these claims out of the realm of the abstract? And respectfully, at the stage of a motion for judgment on the pleadings, what the District Court has to find is there is no possible claim construction that would take the claims out of the realm of the abstract. Or the Court could simply say, I'll adopt whatever claim construction the plaintiff wants me to give. Well, and in fact, contrary to what Facebook told you, Facebook actually proposed themselves claim constructions for bid and bid amount that take it completely out of the realm of the abstract and into the realm of specifically the internet. For example, bid and bid amount, we've been talking about bid, a monetary amount, and this is in the record at A1134, a monetary amount that the advertiser will pay each time a user clicks on the advertiser's advertisement. That was well known in the internet at the time this patent application was filed. And again, Your Honor, respectfully, I think that confuses the idea of what was known in the prior art. This combination was not. But what was known in the prior art versus what was conventional. And whether we are... Something can be conventional in the internet, right? So the question is, does a construction take it out of the realm of the abstract? Does it tie it down to something to where we don't have the risk of preemption? And if a claim construction would do that, then the court should adopt a claim construction if it saves it a claim from being impossibly abstract. But I think, as Ms. King pointed out, you can't really, in infringement litigation, rewrite your claims. Rather, they're custom. So I have a whole bunch of claims of progressively increasing detail. And if it turns out, by the time you get all the detail in the claim, there's no longer a possibility of infringement. These are issues before the district court. So certainly there are limits to how conspicuously and in how much detail one can construe a claim in order to save it. And certainly we're not advocating some novel claim construction principles here. We believe that under Phillips' traditional application of claim construction principles... So what construction of bid would have saved your claim? A monetary amount that the advertiser will pay each time a user clicks on the advertiser's advertisement. That puts it squarely within the realm of only the internet. In Alice, the Supreme Court said that the abstract idea was reconciliation of accounts. But the claims themselves were very specific about how those accounts get reconciled through the use of software and through the internet. But the Supreme Court didn't find that that was enough. I'm not sure how clicking is going to get you more than the shadow accounts and the Asian mechanisms would have gotten Alice. So a claim of that nature would not preempt. It would not preempt the entire known process of bidding, nor would it preempt the entire known commerce of targeted advertising. But preemption is not the test. The Supreme Court didn't... I mean, if they had done a pure preemption analysis, they would have had to say that not all third-party reconciliation is preempted. So I agree that the test is really whether it presents an unreasonable risk of preemption. And in that case, it's improperly abstract and not patentable subject matter. But a problem here is that the district court didn't do us any favors because it didn't engage in any claim construction. And Your Honor asked for an example. That's one of many. I would point out that the citations here are to numerous paragraphs and columns in the specification. The specification... What's your best other claim construction that gets you out of abstract? Just off the top of my head, Your Honor, the phrase, each advertisement being searchable, the claim construction that was proposed was that it must be used in internet search engine so that it actually has to be performed in the internet context. And again, Morsa has always taken the position... But there's your problem again. That's supplying the internet to this abstract concept. And Alice says that's abstract. Well, but if the claims themselves are directed only to an improvement of a technological process... I see I'm past my time. If I might... Please answer the question. Answer the question. So when you have an improvement to an existing technological process, the process here was internet search terms. And the fact that advertising and bidding on advertising was limited by search terms only. So if you can find yourself... But how is that different from ultramershal? Oh, well... I mean, there was very specific language about use of the internet. I understand, but ultramershal here was determined to be only using a viewing of advertising as a currency. So what was actually found as an abstract concept in ultramershal was offering free media in exchange for watching advertisement. But that was despite the fact that there were many areas in the claims that talked about how that would occur via use of the internet. I understand that there was nothing that limited it only in that context. In fact, the court said that the danger here is that it would preempt the entire idea of this abstract idea. It wasn't merely solving an internet problem. So ultramershal was not limited and there was nothing in the claims that was construed as being internet only. Okay. Any more questions? Any more questions? Okay. Thank you. Thank you both. Thank you, Your Honor. We'll take the case under submission.